Good's Estate.    Abram Good's Appeal.    Ault's Appeal.

*Decedent's estates—Debt due by executor —Interest—Commissions.*

An executor who owed a balance of purchase money, upon real estate purchased from his testator but never conveyed to him, allowed the same to stand as security for a fund directed to be invested for the benefit of the widow, and paid her interest thereon regularly during her life, and charged himself in his account with principal and interest to date of filing account, and claimed commissions on the same, as accountant.

*Held,* that the existence of the fund in that form did not involve a breach of duty, that it was not a debt in the ordinary sense, and the general rules as to charge of interest upon debts of executors down to time of actual payment, and the allowance of commissions on debts of executors, did not apply, the accountant here acting as trustee as well as executor.

*Reimbursement of executor for advance to heir.*

Where, by written agreement duly executed, the executor was requested to expend certain moneys in advance of distribution, for the benefit of one of the heirs, he is entitled to reimbursement out of her share, as provided by the terms of the agreement.

Argued Mar. 18, 1892.   Appeals, Nos. 338 and 341, Jan. T., 1892, by Abram Good et al., and Hettie M. Ault, heirs of George Good, deceased, from decree of O. C. Lycoming Co., dismissing exceptions to report of auditor on exceptions and to distribute executor's account.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

APPEAL OF ABRAM GOOD ET AL.

The following facts appeared from the report of J. T. Fredericks, auditor on exceptions and to distribute the third account of John Good, executor of George Good, deceased.   Testator died in 1875, leaving an estate of some $30,000.   The will directed the executor to sell the mansion house at public sale upon the widow's death, and authorized him to be a bidder. He did so bid, and the property was knocked down to him at $3,000, but he refused to comply, denying that he had purchased and alleging spoliation by the other heirs.   The auditor found that he had purchased the property and surcharged him with $3,000, and interest to date of filing account, but refused to include interest to date of confirmation of auditor's report, citing McElhenny's Ap., 46 Pa. 347, which holds that interest is not

chargeable on the funds while an account is pending before an auditor. [1]

The will directed the executor to invest, on first mortgage and bonds, $6,000, which by agreement among the heirs was made $10,000, and pay the interest to the widow during her life. Upon citation the executor admitted that no such investment was made, but that the fund was secured in a mill property purchased by him from testator but not conveyed to him, and on which $9,550 purchase money was still due. On April 22, 1881, the court ordered the accountant to insure this property "as additional security for the moneys in his hands," or file a bond with sureties. The auditor charged the accountant with interest on the $10,000 up to the date of filing the account, but refused to charge interest beyond that date. [3]

The will directed the executor to collect all sums due on "articles of agreement or otherwise" and pay the residue of the estate to testator's children share and share alike, and concluded: "It is my desire that my executor shall settle my estate with the least possible expense, and not to charge more than two hundred for his services." In previous accounts the executor had been credited with over $600 for commissions, and in his third claimed $537.50 additional. This claim was opposed by the heirs, but was allowed by the auditor on the ground that the words in the will, above quoted, were not imperative, and that the fund, being a trust fund, the trustee was entitled to a commission outside of his executorship, citing Spangler's Est., 21 Pa. 336. [2]

The first account was filed in 1879, the second in 1883, and the present account in 1891, the latter embracing the $10,000 above mentioned with interest.

All the heirs but the accountant excepted to the above portions of the auditor's report because (1) he had not surcharged the accountant with interest on the $3,000 purchase money up to date of confirmation of report; (2) had allowed commissions, in spite of the limit fixed by the will, and the fact that the funds for distribution were debts due by the executor personally to the estate; and (3) because he did not surcharge the accountant with interest on the $10,000 up to date of confirmation of report. The court below METZGER, P. J., dismissed the exceptions.

*Errors assigned* were (1–3) dismissal of above exceptions, quoting them.

## AULT'S APPEAL.

It further appeared from the auditor's report that in 1874, the farm of John R. Ault, husband of Hettie R. Ault, one of the heirs of George Good, was about to be sold under execution, and that, in order to assist Mrs. Ault, the following agreement was signed by her and certain heirs, and assented to by the others, viz. :

" Now we, the undersigned heirs and legal representatives of George Good, deceased, for the purpose of procuring said title, free and clear of incumbrances, in the name and for the use and sole benefit of Hettie, wife of the said John R. Ault, being our sister, (and also one of the said heirs) do authorize John Good, executor of the said George Good, deceased, to purchase the same at sheriff's sale or otherwise, and pay the purchase money, due or to become due, to the said Weber, out of any assets in his hands as said executor, due or to become due to us or either of us, and charge the same to our share of said estate respectively, in such proportions as may become necessary after deducting the share of the said Hettie in said estate therefrom. The title to be made to the said Hettie Ault, wife of the said John R. Ault, or to some one in trust for her, her heirs and assigns forever. The said Hettie hereby agreeing to secure the several heirs in the amounts they may so advance, if any, on the land aforesaid, by judgment bonds or mortgage, a first lien thereon, when the amount shall be so ascertained or charged to them by said executor, who may then use the same as a sufficient voucher for that amount against us in the settlement of his account as executor of said estate of George Good, deceased. And such amount as shall be charged against Hettie's share to be a voucher for that amount against her."

In pursuance of said agreement, the farm was purchased and title made in the name of Mrs Ault, who at the time of the audit was still in possession. The accountant claimed the right to apply Mrs. Ault's share in the distribution to partially repaying himself the advances made for her benefit. Mrs. Ault resisted on the ground that the accountant had overstated the amount of her share in his hands at the time of the

agreement, and was estopped from now making a different statement; because the payment was merely voluntary, and was also barred by the statute of limitations; and because nothing in her agreement created any obligation to repay the advances, except the final sentence therein, which she asserted had been added after execution and without her knowledge.

The auditor held that the agreement was binding, apart from the sentence alleged to have been added, and continued:

" It was claimed that the statute of limitation would apply, and therefore John Good could not now claim the amount from Hettie M. Ault, as he paid her the $1,500 in 1877 or 1878.     This would be true if it was a voluntary payment, possibly; but as it was an advancement under an agreement to charge the amount against her in the final settlement, the statute does not apply.     See 9 Phila. 323 ; 3 W. N. 258; 92 Pa. 202; 126 Pa. 277.

" It was claimed by Mrs. Smith and Mrs. Ault that the executor had represented to them that there was $1,500 coming to each of them at that time, and if they had known such was not the case they would not have taken the $1,500.     This may now be their view of it, but the agreement says, ' Out of any assets in his hands as said executor 'due or to become due' to us or either of us.'     This certainly did not mean out of only such money as was then due, or the words 'to become due' would not have been added; but if the executor would advance it, it was to come out of any fund which he might have at any time as executor.     It was well known at that time that $10,000 was left in the estate and the day would come when it was to be distributed, so the agreement was worded so as to include it; and it was certainly proper that it should, as otherwise Mrs. Smith and Mrs Ault would receive more than their share of the estate.     It is not probable that they would demand more of their father's estate than the other heirs were to receive, as the will directed that the shares should be equal.     If John Good was made to pay Hettie M. Ault her equal share with the others in this distribution, she would then be receiving more than they would.

" The ground of estoppel was claimed as a reason why the executor could not claim Mrs. Ault's share.     If this should be held as a reason, it would be equivalent to contradicting the

words of the written agreement, as the agreement uses the words 'due or to become due ;' if, therefore, the executor had used the words attributed to him as to the amount then in his hands in money, the word 'due' would have been sufficient."

The auditor allowed the accountant's claim, whereupon Mrs. Ault filed exceptions, (1, 2,) *inter alia*, to the findings that the agreement was binding and that the claim should be allowed. The court below, METZGER, P. J., dismissed the exceptions, and with certain modifications (see John Good's Appeal, the next case), confirmed the auditor's report, filing an opinion on this point as follows :

" The exceptions filed by Mrs. Ault, if sustained, would do manifest injustice to the executor, who in good faith carried out the agreement of November, 1877. After receiving the title to the property on the terms provided by her agreement, she ought not now to be permitted to set it aside as not binding on her, and I therefore dismiss all the exceptions filed by her."

*Errors assigned*, *inter alia*, were (1, 3) dismissal of exceptions, quoting them, and (4) confirmation of report, quoting decree.

*Addison Candor* and *C. La Rue Munson*, for Abram Good et al., appellants.—The executor having been personally indebted to the estate in the sum of $13,000, and never having invested the same for its benefit, is chargeable with interest to the date of distribution : Landis v. Scott, 32 Pa. 495 ; Clauser's Est., 84 Pa. 51 ; Rodenbach's Ap., 102 Pa. 572 ; Pollock's Est., 4 W. N. 183 ; Bruner's Ap., 57 Pa. 51 ; Sharp's Est., 5 Lanc. L. R. 176 ; Kline's Est., 8 Lanc. L. R. 356 ; Pyle's Est., 2 Ches. Co. 569.

An executor cannot claim commissions on his own debt : Landis v. Scott, supra; Barhite's Ap., 126 Pa. 404 ; Geiger's Ap., 24 W. N. 264 ; Muth's Est., 6 C. C. 597 ; Steger's Est., 3 W. N. 368 ; Gilson's Est., 18 W. N. 570 ; Haine's Est., 1 Pears. 441 ; Spackman's Est., 2 Ches. Co. 153 ; Waylan's Est., 1 C. C. 366 ; Robinett's Ap., 36 Pa. 174 ; Norris's Ap., 71 Pa. 106 ; Seguin's Ap., 103 Pa. 139.

Nor if he claims as trustee, can his commission be paid from

the corpus of the fund: Spangler's Est., 21 Pa. 335 ; Butterbaugh's Ap., 98 Pa. 351.

*W. D. Crocker*, for Hettie M. Ault, appellant.—The executor cannot recover voluntary payments : Edgar v. Shields, 1 Gr. 361 ; Montgomery's Ap., 92 Pa. 202 ; Miller v. Hulme, 126 Pa. 277 ; Perry, Trusts, § 932.

His claim is barred by the statute of limitations, which is pleadable in the orphans' court as well as in the common pleas: Montgomery's Ap., supra; York's Ap., 110 Pa. 69 ; Light's Ap., 136 Pa. 211.

He is estopped by reason of his misrepresentation of the amount in his hands at the date of the agreement : Bigelow, Estoppel, p. 552.

*Henry C. Parsons* and *Samuel L. Youngman*, for appellee, cited, on the question of commissions, Heckert's Ap., 24 Pa. 482 ; Culbertson's Ap., 84 Pa. 304 ; Gilpin's Est., 138 Pa. 144

OPINION BY MR. JUSTICE MITCHELL, July 13, 1892.

The fund, the interest of which was paid to the widow of testator, was a debt of the executor and trustee to the estate, yet its existence in that form did not necessarily, or in fact as the auditor found, involve any breach of duty. It was not a debt in the ordinary general sense, but unpaid purchase money for the mill property, the equitable title to which was in the executor and trustee under articles of purchase from the testator, the legal title however remaining in the latter up to the time of his death, partly at least, as would appear, from an inability to make a clear title during the continuance of an outstanding dower. While therefore the executor's allowing this debt to stand, and treating it as the security for the interest to be paid to the widow during her life, was not an investment of the fund such as the will directed, yet it served the purpose safely, was practically agreed to by the acquiescence of the heirs, and was in effect sanctioned by the orphans' court in its order of April 22, 1881, requiring the insurance of this property " as additional security for the moneys in his hands."

This estate was considerable in amount but apparently very little of it was in cash or other form available for immediate distribution. The executor who also acted as trustee administered it for a period of fourteen or fifteen years, during the life

of the widow, so far as appears, safely and prudently. He accepted the responsibility of advancing money to save a home for one of the heirs, Mrs. Ault, who is now here as an appellant.

These facts are all that are necessary to show that the general rules as to the charge of interest upon debts of the executor to the estate, down to the time of actual payment, and as to the allowance of commissions under such circumstances, as established in the cases cited by the appellants, do not necessarily apply. For the discussion of the particular items we are content to rest the case on the report of the learned auditor, and the opinion of the court.

Appeals dismissed at the costs of the appellants respectively.

[See, also, the next case.]